0590

TRI-CONTINENTAL LEASING CORPORATION, Respondent, v. STE-
VENS, STEVENS & THOMAS, P.A., Appellant, v. ALLIED GENERAL
CORPORATION, Cross-Defendant.

(338 S. E. (2d) 343)

Court of Appeals

*Carroll D. Padgett, Jr.*, Loris, *for appellant.*

*Leo A. Dryer*, Columbia, *for respondent.*

Heard Sept. 24, 1985.

Decided Dec. 3, 1985.

BELL, Judge:

This is an action for breach of contract. The law firm of Stevens, Stevens & Thomas, wishing to replace its existing office copying machine with a new model, entered negotiations with MacDonald Company to obtain a Canon NP 5000 copier. As Stevens did not want to purchase the machine outright, the parties agreed to a lease-purchase financing. Under this arrangement, Stevens selected a copier from MacDonald. A third party, Summit Leasing and Capital Corporation, then executed a lease-purchase contract with Stevens which required Summit to purchase the copier from MacDonald at an agreed cash price and lease it back to Stevens for a term of sixty months at a monthly payment of $185.17. The lease made Stevens responsible for maintenance and repairs on the copier. It also contained a clause in which Summit disclaimed all warranties, "express, implied, or statutory as to any matter whatsoever, including the

condition of equipment, its merchantability or its fitness for any particular purpose." The disclaimer was printed in conspicuous type on the face of the lease.

Pursuant to this agreement, MacDonald delivered the copier to Stevens. From the beginning, Stevens experienced operating problems with the copier, requiring service calls from MacDonald on the average of once a week. Stevens made thirty-four payments under the lease from October 1978 through June 1981, when, due to numerous defects in the copier, it ceased making payments and tendered the machine back to Tri-Continental, the successor in interest to Summit, and to Allied General Corporation, the successor in interest to MacDonald. Tri-Continental refused Stevens' request to terminate the lease. Instead it accelerated the lease payments and commenced this suit to recover the entire balance allegedly due under the lease. In response, Stevens counterclaimed against Tri-Continental and crossclaimed against Allied, alleging breach of express and implied warranties by each.

At trial, the circuit court directed a verdict against Allied for liability on the crossclaim. The jury assessed $5,697.00 in damages against Allied. The jury in turn found Stevens liable to Tri-Continental for $5,697.00, the amount of the unpaid installments under the lease. Stevens appeals this verdict. We affirm.

## I.

Stevens initially asserts it is not liable for the unpaid installments, because Tri-Continental is subject to all claims and defenses Stevens has against Allied for breach of warranty arising from the sale of the defective copier. This argument, apparently based on Section 36-3-306, Code of Laws of South Carolina, 1976, is without merit. The lease-purchase contract between Tri-Continental and Stevens, not being a negotiable instrument, is not subject to the provisions of Section 36-3-306. Stevens' assertion that Tri-Continental is not a "holder in due course" is simply beside the point, since no negotiable instrument is involved.

Stevens is in no better position under the terms of the lease. In that contract, Tri-Continental effectively disclaimed all warranties that may have arisen from

the sale of the copier. The record shows Tri-Continental is not in the business of selling or servicing copying machines. The lease was simply a convenient device for financing a transaction between Stevens and MacDonald. In effect, Tri-Continental was the "banker" for the transaction. The lease states in conspicuous type that Tri-Continental makes no express or implied warranties concerning the copier. It also warns that MacDonald is not Tri-Continental's agent and is not authorized to bind the lessor in any manner. Finally, it provides that if the copier is not properly installed, does not operate as represented or warranted by MacDonald, or is unsatisfactory for any reason, Stevens' claim will be against MacDonald, not Tri-Continental. These provisions are sufficient to foreclose Stevens from asserting its breach of warranty defenses against Tri-Continental.

## II.

Stevens also maintains the judge erred in refusing to charge Code Section 36-2-313(1), dealing with creation of express warranties, and Code Section 36-2-316(1), governing the disclaimer of express warranties. We have examined his general charge and find the substance of those sections was covered by the judge. It was not error to refuse the requested instructions when the subject matter thereof was fully covered by his general charge. *Swindler v. Peay*, 227 S. C. 157, 87 S. E. (2d) 296 (1955); *O'Neal v. Carolina Farm Supply of Johnston, Inc.*, 279 S. C. 490, 309 S. E. (2d) 776 (Ct. App. 1983).

Moreover, the judge was under no obligation to give the charge in the form requested. *See Floyd v. Country Squire Mobile Homes, Inc.*, 336 S. E. (2d) 502 (S. C. Ct. App. 1985). As proposed, the additional instruction was an incomplete statement of the law. When it was refused, counsel took no exception to the judge's ruling.[1] This Court

---

[1] The entire colloquy in the record is as follows:

MR. PADGETT: Your Honor, there are two additional things. I did not hear and maybe Your Honor did, if Your Honor did, please tell me, but I didn't understand Your Honor to charge that express warranty or an agreement which creates an express warranty and words of disclaiming it are inoperative.

THE COURT: I didn't charge it in those words. If I recall what I instructed them, I instructed that.

will not review a trial judge's ruling for error if counsel did not take exception to the ruling at trial. *Clarke v. Harper*, 8 S. C. 256 (1876).

## III.

Stevens next argues the trial judge erred in refusing to rule that the lessor's attempts to exclude warranties and limit the lessee's remedies were unconscionable as a matter of law and should not be enforced. Stevens did not raise these issues or request such rulings at trial. This Court will not pass on issues raised for the first time on appeal. *Mackey v. Kerr-McGee Chemical Co.*, 280 S. C. 265, 312 S. E. (2d) 565 (Ct. App. 1984).

## IV.

Stevens finally argues the circuit court should have directed a verdict for nominal damages, because Tri-Continental did nothing to minimize damages once Stevens broke the lease.

As a general rule, one who is injured by the acts of another is required to do those things an ordinary prudent person would do under similar circumstances to avoid damages which are reasonably avoidable. However, the law does not require him to unreasonably exert himself or to incur substantial expense to avoid damages. *See West v. Whitney-Fidalgo Seafoods, Inc.*, 628 P. (2d) 10 (Alaska 1981); *Barbara Oil Co. v. Patrick Petroleum Co.*, 1 Kan. App. (2d) 437, 566 P. (2d) 389 (1977). The party who claims damages should have been minimized has the burden of proving they could reasonably have been avoided or reduced. *West v. Whitney-Fidalgo Seafoods, Inc., supra; Branon v. Ellbee Pictures Corp.*, 42 Ga. App. 293, 155 S. E. 923 (1930).

In this case, Stevens makes the naked assertion that Tri-Continental could have "mitigated" its damages to a nominal amount by picking up the copier and repairing it, reselling it, or taking some other course of action to minimize damages. Yet it adduced no proof to show any of these courses was feasible, what their cost would be to Tri-Continental, and whether they would, in fact, reduce the damages caused by Stevens' breach. Since Tri-Continental is engaged in commercial leasing as a financing device,

does not deal in copying machines in its regular course of trade, has no offices in South Carolina, maintains no inventory of copying machines, has no facilities for repairing them, and was dealing with a seriously defective copier that had been depreciated in value by over two years of actual use, it seems unlikely it could have reduced its damages significantly by taking the actions Stevens suggests. At the very least, there is no proof that a net reduction of damages would have resulted.

For the foregoing reasons, Stevens' exceptions are overruled. The judgment of the circuit court is

Affirmed.

SHAW and CURETON, JJ., concur.