THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Bob Brandi
 Stations, Inc. and R.E., Inc., Respondents,
 v.
 Q.L. Evans
 Construction Co., Lanier Construction Co., Palmetto Construction Co. and Mike
 Haas, Defendants,
 Of Whom Q.L.
 Evans Construction Co. is the Appellant.
 
 
 

Appeal From Lexington County
 Larry R. Patterson, Circuit Court Judge
Unpublished Opinion No.  2008-UP-027
Submitted January 2, 2008  Filed January
 10, 2008   
AFFIRMED

 
 
 
 Brian Carroll Gambrell, of Columbia, for Appellant.
 S. Jahue Moore, Jr., and James Edward Bradley, both of West Columbia, for Respondents.
 
 
 

PER CURIAM:  Appellant,
 Q.L. Evans Construction Company, appeals the trial courts refusal to reduce
 the judgment amount due to an alleged failure on the part of Respondents to
 mitigate their damages.  We affirm.[1]
FACTS
Bob
 Brandi owns both of the Respondent companies.  Bob Brandi Stations, Inc.,
 operates convenience stores on land and in stores owned by R.E. Stations,
 Inc..  In 1995, Respondents contracted with Mike Hass and his company, Palmetto
 Construction Company, to serve as general contractor for the construction of a
 convenience store.  Haas had functioned as general contractor on several other
 similar projects for Respondents.   The contract between Respondents and Haas
 required Haas to supervise the project and to provide a turn key finished
 product.  Haas contracted with Appellant to install and finish concrete
 driveway areas as part of the project.  Construction of the convenience store
 began in 1996. 
When
 Appellants owner, Evans, arrived at the construction site to start work, he
 found the soil at the site had not been properly compacted and was too soft. 
 Evans informed Haas of the problem with the soil and warned him that the
 concrete would likely fail if installed.[2] 
 Haas instructed Evans to install the concrete despite the inadequately
 compacted soil.  Neither Haas nor Evans informed Respondents of the compaction
 problem.    
The
 finished concrete surface began showing signs of a major failure in 2000. 
 Respondents informed Haas of the failure.  Haas blamed the failure on the
 sealant which had been applied to the concrete and promised to contact a
 representative from the sealants manufacturer.  This never occurred.  Instead,
 Haas dropped the ball by doing nothing to remedy the problems.  Upon
 realizing the problems with the concrete would not be corrected, Respondents
 hired a contractor to remedy the problems and initiated this action in 2001. 
 
This
 matter came before the trial court for a non-jury trial on January 19, 2006. 
 By order dated March 16, 2006, the trial court granted judgment for the
 Respondents against Q.L. Evans; Q.L. Evans Construction Company; Mike Hass; and
 Palmetto Construction Company jointly and severely in the amount of $154,299.15,
 which represented the $151,803.36 Respondents spent to repair and replace the
 concrete and $2,495.79 in lost profits due to business interruptions.  The
 trial court, in its order, specifically found: As the soil under the concrete
 was improperly compacted there is nothing [Respondents] could have done to
 prevent failure other than to replace the concrete which they did.  Appellant
 then filed a motion pursuant Rule 59, SCRCP, based on the failure of the trial
 court to reduce judgment on behalf of Respondents for failing to mitigate their
 damages.  The trial court denied this motion and reiterated the fact that Respondents
 could not have done anything reasonable to mitigate damages.  This
 appeal follows.
STANDARD OF REVIEW
The
 reasonableness of actions to mitigate damages is ordinarily a question for the
 finder of fact.  McClary v. Massey Ferguson, Inc., 291 S.C. 506, 511,
 354 S.E.2d 405, 408 (Ct. App. 1987).

 In an
 action at law, on appeal of a case tried without a jury, the findings of fact
 of the judge will not be disturbed upon appeal unless found to be without
 evidence which reasonably supports the judges findings. The rule is the same
 whether the judges findings are made with or without, a reference. The judges
 findings are equivalent to a jurys findings in a law action.

 Townes Associates, Ltd.
 v. City of Greenville,  266 S.C. 81, 86, 221 S.E.2d 773,
 775 (1976) (citing Chapman v. Allstate Ins. Co., 263 S.C. 565, 211
 S.E.2d 876 (1974)).  In a law case tried without a jury, questions regarding
 the credibility and the weight of evidence are exclusively for the trial
 judge.  Wayne Smith Const. Co., Inc. v. Wolman, Duberstein, and Thompson,
 294 S.C. 140, 146, 363 S.E.2d 115, 118 (Ct. App. 1987).   
LAW/ANALYSIS
Appellant argues the trial courted erred by refusing to reduce the
 judgment amount due to an alleged failure on the part of Respondents to
 mitigate their damages.  We find no error in the trial courts ruling on this
 issue.
A
 party injured by the acts of another is required to do those things a person of
 ordinary prudence would do under the circumstances to mitigate damages;
 however, the law does not require unreasonable exertion or substantial expense
 for this to be accomplished.  Genovese v. Bergeron, 327 S.C. 567, 572,
 490 S.E.2d 608, 611 (Ct. App. 1997).  Furthermore, the law does not require
 him to unreasonably exert himself or to incur substantial expense to avoid
 damages.  Tri-Continental Leasing Corp. v. Stevens, Stevens & Thomas,
 P.A., 287 S.C. 338, 342, 338 S.E.2d 343, 346 (Ct. App. 1985).  The party who claims damages should have been minimized
 has the burden of proving they could reasonably have been avoided or reduced.  Id.
Appellant argues a reduction was required because Respondents
 witnesses testified that delay between discovery of the problems and remedial
 action worsened the damage and that Appellant offered to fix problems in 2000
 for a price which was more than $110,000 less than what the Respondent
 ultimately paid.  Appellant testified that the problems with the concrete were
 caused by the defective soil conditions and that only way to fix the problem
 would be to take the original concrete up and replace it.  Appellant also
 testified that in July of 2000, before the condition of the concrete worsened
 to its present state, he offered to fix the concrete for $45,000.00.  This is
 the only reference in the record to a specific amount the mitigation would have
 cost Respondents.   In response to questions from the trial court regarding
 this figure, Appellant stated the figure only included replacing the concrete
 which was damaged at the time of his inspection in 2000 and additional damage
 could still have occurred even if Respondent had utilized the services he
 offered at that time.  Considering this testimony and the fact that Appellant
 bore the burden of showing Respondents failed to mitigate their damages, we
 find no error in the trial courts ruling on this issue.
CONCLUSION
For the
 reasons stated above, the order of the trial court is
AFFIRMED.
ANDERSON, SHORT, and WILLIAMS JJ., concur.

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.
[2] Installing concrete over soft soil
 typically results in severe cracking in the finished concrete surface.